# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

WALTER BRADIX, IV, individually and on
behalf of all others similarly situated,

      Plaintiff,

v.

ADVANCE STORES COMPANY, INC.,
d/b/a ADVANCE AUTO PARTS,

      Defendant.

CASE NO. 2:16-cv-04902

JUDGE SUSIE MORGAN

MAGISTRATE DANIEL E. KNOWLES, III

## MEMORANDUM IN SUPPORT OF
## DEFENDANT'S MOTION TO DISMISS

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

BACKGROUND ............................................................................................................... 1

LEGAL STANDARD ....................................................................................................... 2

ARGUMENT .................................................................................................................... 3

I.      PLAINTIFF HAS SUFFERED NO INJURY .................................................... 3

      A.    Plaintiff Has Not Identified a Concrete, Particularized Injury that Is Actual or Certainly Impending ........................................................... 4

      B.    Expenses Voluntarily Incurred to Protect Against Possible Future Harm Do Not Confer Standing ......................................................... 7

II.    PASSING REFERENCE TO "UNIDENTIFIED INQUIRIES" ON PLAINTIFF'S CREDIT REPORT FAILS TO STATE A CLAIM OR CONFER STANDING ............. 8

      A.    Plaintiff Alleges Too Little to Infer More than the Mere Possibility of Misconduct ................................................................................ 9

      B.    Plaintiff Fails to Allege that Any Attempted Identity Theft Is Fairly Traceable to Advance ......................................................... 10

      C.    Plaintiff Alleges No Injury that Is Redressable by This Court ........................... 11

III.   PLAINTIFF FAILS TO STATE CLAIMS FOR NEGLIGENCE, GROSS NEGLIGENCE, BREACH OF FIDUCIARY DUTY, AND INVASION OF PRIVACY ..................................................................................................... 11

      A.    All Causes of Action Should Be Dismissed for Failure to Sufficiently Allege Damages ................................................................................ 11

      B.    The Third Cause of Action Should Be Dismissed for Failure to Sufficiently Allege Any Fiduciary Duty ................................................. 13

      C.    The Fourth Cause of Action Should Be Dismissed for Failure to Allege Intentional Invasion of Privacy ......................................................... 14

CONCLUSION ................................................................................................................ 15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Allison v. Aetna, Inc.*,
    No. 09-2560, 2010 WL 3719243 (E.D. Pa. Mar. 9, 2010) ..................................................5 n.2

*Amburgy v. Express Scripts, Inc.*,
    671 F. Supp. 2d 1046 (E.D. Mo. 2009)..................................................................................5 n.2

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)........................................................................................1 n.1, 2, 3, 9

*Bazley v. Tortorich*,
    397 So. 2d 475 (La. 1981) ..................................................................................................14

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)................................................................................................2, 3, 9

*Bell v. Acxiom Corp.*,
    No. 4:06-CV-00485-WRW, 2006 WL 2850042 (E.D. Ark. Oct. 3, 2006).........................5 n.2

*Chambliss v. Carefirst, Inc.*,
    No. RDB-15-2288, 2016 WL 3055299 (D. Md. May 27, 2016) ........................................4 n.2

*Clapper v. Amnesty Int'l USA*,
    133 S. Ct 1138 (2013) ................................................................................................. passim

*Galaria v. Nationwide Mut. Ins. Co.*,
    998 F. Supp. 2d 646 (S.D. Ohio 2014) ...................................................................4 n.2, 8 n.3

*Green v. eBay, Inc.*,
    No. 14-1688, 2015 WL 2066531 (E.D. La. May 4, 2015) (Morgan, J.)......................... passim

*Hammond v. The Bank of New York Mellon Corp.*,
    No. 08-civ-6060 (RMB)(RLE), 2010 WL 2643307 (S.D.N.Y. June 25, 2010) .................5 n.2

*Hinton v. Heartland Payment Sys., Inc.*,
    No. 09-594 (MLC), 2009 WL 704139 (D.N.J. Mar. 16, 2009) .........................................5 n.2

*In re Barnes & Noble Pin Pad Litig.*,
    No. 12-cv-8617, 2013 WL 4759588 (N.D. Ill. Sept. 3, 2013) ..........................................5 n.2

*In re Science Apps. Int'l Corp. (SAIC) Backup Tape Data Theft Litig.*,
    45 F. Supp. 3d 14 (D.D.C. 2014) ........................................................................................8 n.3

*In re Zappos.com, Inc.*,
    108 F. Supp. 3d 949 (D. Nev. 2015).......................................................................4 n.2, 8 n.3

*Jobe v. ATR Mktg., Inc.*,
    No. Civ.A. 96–3396, 1998 WL 799236 (E.D. La. Nov. 13, 1998)....................................12, 13

*Key v. DSW, Inc.*,
    454 F. Supp. 2d 684 (S.D. Ohio 2006) ...........................................................................5 n.2

*Leger v. Spurlock*,
    589 So. 2d 40 (La. App. 1 Cir. 1991) ...................................................................................14

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992).................................................................................................................3

*Melacon v. La. Office of Student Fin. Assistance*,
    567 F. Supp. 2d 873 (E.D. La. 2008).....................................................................................12

*Monsanto Co. v. Geertson Seed Farms*,
    561 U.S. 139 (2010)...............................................................................................................10

*Omnitech Int'l, Inc. v. Clorox Co.*,
    11 F.3d 1316 (5th Cir. 1994) .................................................................................................13

*Peters v. St. Joseph Servs. Corp.*,
    74 F. Supp. 3d 847 (S.D. Tex. 2015) ...................................................................4 n.2, 10, 11

*Pinero v. Jackson Hewitt Tax Serv. Inc.*,
    594 F. Supp. 2d 710 (E.D. La. 2009) .....................................................................................12

*Ponder v. Pfizer, Inc.*,
    522 F. Supp. 2d 793 (M.D. La. 2007) ....................................................................................12

*Randolph v. ING Life Ins. & Annuity Co.*,
    486 F. Supp. 2d 1 (D.D.C. 2007) ........................................................................................5 n.2

*Rathey v. Priority EMS, Inc.*,
    2004-0199 (La. App. 4 Cir. 1/12/05); 894 So. 2d 438 ...........................................................12

*Reilly v. Ceridian Corp.*,
    664 F.3d 38 (3d Cir. 2011)........................................................................................4 n.2, 8 n.3

*Roshto v. Hebert*,
    439 So. 2d 428 (La. 1983) ......................................................................................................14

*Spokeo, Inc. v. Robins*,
    136 S. Ct. 1540 (2016)..............................................................................................................3

*State v. Rochon*,
    2011-0009 (La. 10/25/11); 75 So. 3d 876 ..........................................................................8 n.3

*Storm v. Paytime, Inc.*,
90 F. Supp. 3d 359 (M.D. Pa. 2015) ...................................................4 n.2

*Strautins v. Trustwave Holdings, Inc.*,
27 F. Supp. 3d 871 (N.D. Ill. 2014) ...................................................4 n.2

*Susan B. Anthony List v. Driehaus*,
134 S. Ct. 2334 (2014) ...............................................................................2

*U.S. Hotel & Resort Mgmt., Inc. v. Onity, Inc.*,
No. CIV-13-1499, 2014 WL 3748639 (D. Minn. July 30, 2014) ...................4-5 n.2

*Vantage Trailers, Inc. v. Beall Corp.*,
567 F.3d 745 (5th Cir. 2009) ...................................................................2

*Warth v. Seldin*,
422 U.S. 490 (1975)...................................................................................3

*Whitmore v. Arkansas*,
495 U.S. 149 (1990)...................................................................................2

*Young v. St. Landry Par. Sch. Bd.*,
95-1480 (La. App. 3 Cir. 5/1/96); 673 So. 2d 1272......................................12, 13

## STATUTES

Federal Rule of Civil Procedure Rule
12(b)(1) ................................................................................................1, 2
12(b)(6) ................................................................................................1, 2

## OTHER AUTHORITIES

Fair Isaac Corporation, *Credit Report Q&A: What are inquiries and how do they affect
my FICO score?*, http://www.myfico.com/crediteducation/questions/inquiry-credit-
score.aspx ...............................................................................................9

Restatement (Second) of Torts, § 652D, cmt. *a* (1977) ........................................15

Pursuant to Federal Rule of Civil Procedure Rule 12(b)(1) and 12(b)(6), Defendant Advance Stores Company, Incorporated ("Advance") moves to dismiss the petition for lack of standing and for failure to state a claim.

## BACKGROUND

This case arises out of the alleged theft of personally identifiable information of Mr. Walter Bradix, IV ("Plaintiff"), a former Advance employee.  Plaintiff's information was allegedly stolen in March 2016, when an unidentified third party defrauded an Advance employee into mistakenly disclosing the W-2s of all people who worked for Advance in 2015.[1] (Pet. ¶¶ 1–2, Ex. A.)  Plaintiff seeks to represent a class of "all other similarly situated [Advance] employees, both current and former," whose information was allegedly disclosed in the attack. (*Id.* preamble.)

Nowhere in the petition does Plaintiff plead that he has suffered any injury in fact or that he faces any certainly impending harm that is fairly traceable to Advance and the alleged disclosure of Plaintiff's W-2.  Plaintiff does not plead that his identity has been stolen, that anyone has fraudulently filed a tax return in his name, or that he has been denied credit as a result of his W-2's disclosure.  Nevertheless, Plaintiff attempts to assert claims for negligence, gross negligence, breach of fiduciary duty, and invasion of privacy on behalf of himself and the putative class.  (*Id.* ¶¶ 22–40.)  In the absence of any actual injury, Plaintiff lists as his "damages" "potential identity theft, loss of credit, loss of opportunity for credit, denial of credit applications and severe stress and anxiety associated with the months or years it will take to clear up Advance's mess."  (*Id.* ¶¶ 21, 26.)  Plaintiff also surmises that he and putative class members

---

[1] As it is required to do, and for purposes of this motion only, Advance accepts the well-pleaded allegations of the petition as true.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"will nonetheless be required to spend significant resources, both in time and financial, to correct the inevitable breaches into their personal credit histories." (*Id.* ¶ 6.)

Theoretical future injury—and voluntary costs to counter the risk of that theoretical injury—is the gravamen of this case.  For the reasons outlined below, under well-established authority, Plaintiff fails to plead an injury in fact or certainly impending harm that is fairly traceable to Advance and he therefore lacks standing to bring his claims.  For similar reasons, Plaintiff fails to sufficiently state a claim on which relief can be granted.  Accordingly, the petition should be dismissed.

## LEGAL STANDARD

Advance moves to dismiss the petition for lack of subject-matter jurisdiction under Rule 12(b)(1) and for failure to state a claim under Rule 12(b)(6).

To demonstrate standing—and thus subject matter jurisdiction under Rule 12(b)(1)—Plaintiff must show (1) an injury in fact, (2) a causal connection between the injury in fact and the defendant's action, and (3) that the injury is redressable.  *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2341 (2014).  The Court evaluates standing based on the facts alleged in the petition and cannot "create its own jurisdiction by embellishing otherwise deficient allegations of standing."  *Whitmore v. Arkansas*, 495 U.S. 149, 155–56 (1990).  Plaintiff bears "the burden of proving subject matter jurisdiction by a preponderance of the evidence."  *Vantage Trailers, Inc. v. Beall Corp.*, 567 F.3d 745, 748 (5th Cir. 2009).

On a motion to dismiss pursuant to Rule 12(b)(6), the Court limits its consideration to the petition's well-pleaded factual allegations.  *Ashcroft*, 556 U.S. at 679.  Those well-pleaded factual allegations must "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  In making this plausibility determination, while the Court must accept factual allegations as true, this "tenet . . . is inapplicable to legal conclusions."

2

*Ashcroft*, 556 U.S. at 678 (citation omitted).  Mere labels, conclusions, or formulaic recitations of a cause of action's elements are insufficient to state an actionable claim. *Twombly*, 550 U.S. at 555.

## ARGUMENT

## I.  PLAINTIFF HAS SUFFERED NO INJURY.

Article III, Section 2 of the U.S. Constitution limits federal courts' jurisdiction to actual cases and controversies.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559 (1992).  This limitation underpins the doctrine of standing, which asks "whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues."  *Warth v. Seldin*, 422 U.S. 490, 498 (1975).  Standing is "the threshold question in every federal case, determining the power of the court to entertain the suit."  *Id.*  The "irreducible constitutional minimum of standing" begins with an injury in fact, which must be "concrete and particularized" and "actual or imminent, not conjectural or hypothetical."  *Lujan*, 504 U.S. at 560 (internal quotations and citation omitted).  If harm is threatened, it must be "certainly impending."  *Clapper v. Amnesty Int'l USA*, 133 S. Ct 1138, 1147 (2013).  Moreover, that concrete and particularized, actual or certainly impending injury must be "'fairly traceable to the challenged action[,] and redressable by a favorable ruling.'"  *Id.* (quoting *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139 (2010)).  The Supreme Court reaffirmed these principles a few weeks ago when it issued *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), reversing the Ninth Circuit for failing to properly analyze the standing requirements.  The Court emphasized that an injury sufficient to establish standing must be both "particularized" and "concrete," which includes the requirement that it "must be '*de facto*'; that is, it must actually exist."  *Id.* at 1548.  When the Court uses the adjective "'concrete,'" it "mean[s] to convey the usual meaning of the term—'real,' and not 'abstract.'"  *Id.* (citing Webster's Third New International Dictionary 472 (1971)).

3

Here, Plaintiff alleges no injury in fact that is fairly traceable to Advance.  Instead, Plaintiff claims that some injury—that is, "potential identity theft" and credit damage—might befall him in the future.  (Pet. ¶¶ 21, 26.)  That is insufficient.  Nor is it sufficient to allege the voluntary outlay of costs to protect against the potential threat of future harm—like the "significant" time and financial resources Plaintiff claims he might spend defending against identity theft.  (*Id.* ¶ 6.)  None of these alleged harms constitute "injury" in connection with the state law causes of action on which Plaintiff purports to rely.  (*See infra* Section III.)

### A. Plaintiff Has Not Identified a Concrete, Particularized Injury that Is Actual or Certainly Impending.

Nowhere does the petition allege that Plaintiff actually suffered identity theft, tax fraud, or denial or loss of credit.  The petition thus attempts to predicate standing solely on the "potential identity theft" Plaintiff might face.  (Pet. ¶¶ 7, 24, 28, 35.)  As this Court noted in *Green v. eBay, Inc.*, No. 14-1688, 2015 WL 2066531, at *1 (E.D. La. May 4, 2015) (Morgan, J.), the vast majority of courts that have confronted speculative claims like these, based on nothing more than the risk of future identity theft, dismiss them.[2]  This is because risk of identity theft—

---

[2] The list of cases so holding is long.  *See, e.g., Reilly v. Ceridian Corp.*, 664 F.3d 38, 44–46 (3d Cir. 2011) (finding that "[i]n data breach cases where no misuse is alleged, [ ] there has been no injury"); *Chambliss v. Carefirst, Inc.*, No. RDB-15-2288, 2016 WL 3055299, at *4 (D. Md. May 27, 2016) (holding that the "mere loss of data . . . does not constitute an injury sufficient to confer standing"); *In re Zappos.com, Inc.*, 108 F. Supp. 3d 949, 958–59 (D. Nev. 2015) ("[T]he increased threat of identity theft and fraud stemming from [a] security breach does not constitute an injury-in-fact sufficient to confer standing."); *Storm v. Paytime, Inc.*, 90 F. Supp. 3d 359, 366 (M.D. Pa. 2015) (finding no standing where plaintiffs did not allege that they actually suffered any form of identity theft as a result of the defendant's data breach); *Peters v. St. Joseph Servs. Corp.*, 74 F. Supp. 3d 847, 853–54 (S.D. Tex. 2015) (finding no standing where plaintiff did not allege actual identity theft or fraud despite the possibility "that fraudulent use of her personal information could go undetected for long periods of time"); *Galaria v. Nationwide Mut. Ins. Co.*, 998 F. Supp. 2d 646, 653–55 (S.D. Ohio 2014) (determining that injury from theft of personally identifiable information such as names and social security numbers was speculative at best); *Strautins v. Trustwave Holdings, Inc.*, 27 F. Supp. 3d 871, 876–77 (N.D. Ill. 2014) (finding that data breach did not satisfy injury-in-fact requirement and could not support a finding of "imminent" risk of harm); *U.S. Hotel & Resort Mgmt., Inc. v. Onity, Inc.*, No. CIV-13-1499

4

even if there is an objectively reasonable likelihood of that risk—without more, is not a

"certainly impending" injury.  *See Clapper*, 133 S. Ct. at 1147 (overturning circuit court's

"objectively reasonable likelihood" standard); *see also Green*, 2015 WL 2066531, at *4–5

(finding that risk of identity theft is insufficient to confer standing).

   To hold otherwise in this case would endorse the position the Supreme Court rejected in

*Clapper v. Amnesty International USA*.  In that case, respondents challenged the Foreign

Intelligence Surveillance Act of 1978, which permitted surveillance of individuals who were not

"United States persons" and who were believed to be located outside the United States.  *Id.* at

1142.  When challenged on standing, the respondents argued they would likely engage in

---

(SRN/FLN), 2014 WL 3748639, at *5 (D. Minn. July 30, 2014) ("[A] majority of the courts . . . hold that plaintiffs whose confidential data has been exposed, or possibly exposed by theft or a breach of an inadequate computer security system, but who have not yet had their identity stolen or their data otherwise actually abused, lack standing to sue the party who failed to protect their data."); *In re Barnes & Noble Pin Pad Litig.*, No. 12-cv-8617, 2013 WL 4759588, at *3 (N.D. Ill. Sept. 3, 2013) ("Merely alleging an increased risk of identity theft or fraud is insufficient to establish standing."); *Hammond v. The Bank of New York Mellon Corp.*, No. 08-civ-6060 (RMB)(RLE), 2010 WL 2643307, at *2 (S.D.N.Y. June 25, 2010) ("Plaintiffs here do not have Article III standing (*i.e.*, there is no 'case or controversy') because they claim to have suffered little more than an increased risk of future harm from the loss (whether by accident or theft) of their personal information."); *Allison v. Aetna, Inc.*, No. 09-2560, 2010 WL 3719243, at *5 (E.D. Pa. Mar. 9, 2010) (finding lack of standing because plaintiff's "alleged injury of an increased risk of identity theft is far too speculative"); *Amburgy v. Express Scripts, Inc.*, 671 F. Supp. 2d 1046, 1052 (E.D. Mo. 2009) ("[P]laintiff surmises that, as a result of the security breach, he faces an increased risk of identity theft at an unknown point in the future.  On the facts as alleged in the Complaint, it cannot be said that the alleged injury to plaintiff is imminent."); *Hinton v. Heartland Payment Sys., Inc.*, No. 09-594 (MLC), 2009 WL 704139, at *1 (D.N.J. Mar. 16, 2009) (*sua sponte* dismissing case because plaintiff's allegations of increased identity-theft and fraud risk "amount to nothing more than mere speculation"); *Randolph v. ING Life Ins. & Annuity Co.*, 486 F. Supp. 2d 1, 8 (D.D.C. 2007) ("Plaintiffs' allegations therefore amount to mere speculation that at some unspecified point in the indefinite future they will be the victims of identity theft."); *Key v. DSW, Inc.*, 454 F. Supp. 2d 684, 689 (S.D. Ohio 2006) ("In the identity theft context, courts have embraced the general rule that an alleged increase in risk of future injury is not an 'actual or imminent' injury."); *Bell v. Acxiom Corp.*, No. 4:06-CV-00485-WRW, 2006 WL 2850042, at *2 (E.D. Ark. Oct. 3, 2006) (rejecting plaintiff's allegation of increased risk of identity theft and stating, "[b]ecause Plaintiff has not alleged that she has suffered any concrete damages, she does not have standing under the case-or-controversy requirement").

sensitive communications with individuals who would be targets of surveillance under the Act, and that there was "an objectively reasonable likelihood that their communications will be acquired . . . at some point in the future." *Id.* at 1143. The Supreme Court concluded, however, that this "theory of *future* injury is too speculative to satisfy the well-established requirement that threatened injury must be 'certainly impending.'" *Id.*

Here, Plaintiff alleges no more than the kind of speculative injury at issue in *Clapper*. Indeed, Plaintiff concedes that the occurrence of his alleged injury will depend entirely on the decisions of independent actors. (*See* Pet. ¶ 6 ("The information scammed from Advance *can*, and *likely* already has been used by the thieves, or third parties to whom such information is transferred and/or sold, to file tax returns, open revolving credit accounts, purchase vehicles and even apply for and procure a job.") (emphasis added).) Even though Plaintiff alleges that an unnamed third party has his personal information, whether he will become a victim of identity theft or tax fraud is entirely contingent on what, if anything, the third party criminal does with that information. If they do nothing, there will be no injury. *See Clapper*, 133 S. Ct. at 1150 ("We decline to abandon our usual reluctance to endorse standing theories that rest on speculation about the decisions of independent actors.").

This Court reached the same conclusion when facing analogous allegations in *Green v. eBay, Inc.* In that case, after unknown third parties gained unauthorized access to and stole eBay's user information, a plaintiff asserted claims not because his identity had been stolen, but because "[c]riminals who now possess Plaintiffs' and the class members' personal information *may* hold the information for later use, or continue to sell it between identity thieves." *Green*, 2015 WL 2066531, at *5. As the Court noted then, "an increase in the risk of harm is irrelevant—the true question is whether the harm is certainly impending." *Id.* Here, just as in

*Green*, the answer is no.  "Whether Plaintiff and other class members actually become victims of identity theft depends on numerous variables, including whether their data was actually taken when it was accessed, whether certain information was decrypted, whether the data was actually misused or transferred to another third party and misused, and whether or not the third party succeeded in misusing the information.  The mere fact that Plaintiff's information was accessed during the Data Breach is insufficient to establish injury-in-fact."  *Id.*

> **B.     Expenses Voluntarily Incurred to Protect Against Possible Future Harm Do Not Confer Standing.**

In *Clapper*, the Supreme Court also rejected the notion that parties have standing when they "take costly and burdensome measures to protect" against potential future harm.  *Clapper*, 133 S. Ct. at 1151.  The Court specifically rejected the Second Circuit's position that "plaintiffs have established that they suffered *present* injuries in fact . . . stemming from a reasonable fear of *future* harmful [] conduct."  *Id.* (internal quotations and citation omitted).  After *Clapper*, it is clear that alleged losses, no matter how reasonable, are not "fairly traceable" to a defendant's actions if willingly incurred to protect against a possibility of future harm.  *Id.* at 1152–53.

It is therefore insufficient to allege, as Plaintiff does, that he and putative class members "will . . . be required to spend significant resources, both in time and financial, to correct the inevitable breaches into their personal credit histories."  (Pet. ¶ 6.)  Assuming Plaintiff has already spent such resources—which the Petition, written exclusively in the future and subjunctive tenses, suggests that he has not—his costs are still insufficient to create an injury in fact, because a plaintiff "cannot manufacture standing merely by inflicting harm on [himself] based on [his] fears of hypothetical future harm that is not certainly impending."  *Clapper*, 133 S. Ct. at 1151; *see also Green*, 2015 WL 2066531, at *5 ("[A]llegations relating to costs already incurred or that may be incurred to monitor against future identity theft or identity fraud likewise

fail to constitute injury-in-fact . . . .").[3]  "If the law were otherwise, an enterprising plaintiff

would be able to secure a lower standard for Article III standing simply by making an

expenditure based on a nonparanoid fear."  *Clapper*, 133 S. Ct. at 1151.[4]

## II.    PASSING REFERENCE TO "UNIDENTIFIED INQUIRIES" ON PLAINTIFF'S CREDIT REPORT FAILS TO STATE A CLAIM OR CONFER STANDING.

Plaintiff attempts to plead harm by alleging that he "has noticed two as-yet unidentified

inquiries on his consumer credit report" to "secure vehicle financing."  (Pet. ¶ 5.)[5]  Critically,

however, plaintiff stops short of claiming that these "unidentified inquiries" represent attempts

by third parties to misuse his personal data or that his identity has in fact been stolen.  He also

fails to allege how the inquiries were proximately caused by Advance, or that he has suffered any

---

[3] *See also In re Zappos.com, Inc.*, 108 F. Supp. 3d at 961 (finding that, while "purchasing monitoring services is a responsible response to a data breach, . . . costs incurred to prevent future harm is not enough to confer standing") (citation omitted); *Galaria*, 998 F. Supp. 2d at 658 (plaintiffs "cannot create standing by choosing to make expenditures in order to mitigate a purely speculative harm"); *In re Science Apps. Int'l Corp. (SAIC) Backup Tape Data Theft Litig.*, 45 F. Supp. 3d 14, 26 (D.D.C. 2014) ("There is, after all, nothing unreasonable about monitoring your credit after a data breach. . . .  But the Supreme Court has determined that proactive measures . . . do not create an injury in fact . . . ."); *Reilly*, 664 F.3d at 46 ("[A]lleged time and money expenditures to monitor [] financial information do not establish standing, because costs incurred to watch for a speculative chain of future events based on hypothetical future criminal acts are no more 'actual' injuries than the alleged 'increased risk of injury' . . . .").

[4] For the same reasons discussed in Section I, *supra*, Louisiana state courts would also find that Plaintiff's claims are not justiciable.  *See State v. Rochon*, 2011-0009 (La. 10/25/11), 75 So. 3d 876, 882 (explaining that Louisiana courts only preside over "justiciable controversy," which requires "'actual present or immediately threatened injury'" and more than "hypothetical threat") (quoting *Laird v. Tatum*, 408 U.S. 1 (1972) and *Warth v. Seldin*, 422 U.S. 490 (1975)).  Moreover, as discussed in Section III, *infra*, none of Plaintiff's allegations are sufficient to plead injury as required by his state law claims.

[5] It is notable that Plaintiff may have learned of these inquiries on his credit report precisely because, as Plaintiff acknowledges in his Petition, Advance automatically enrolled him in identity protection and credit-monitoring services at no cost to him after the March 2016 data breach.  (Pet. ¶ 7 & Ex. A; *see also* Declaration of Tyler J. Rench ("Rench Decl."), Ex. 1.)  Those services include dedicated investigation to assist in recovering financial assets and restoration of credit, credit monitoring, and a $1 million identity theft insurance policy.  (*Id.* Ex. A; Rench Decl. Ex. 1.)

harm that is redressable by this Court as a result.  Thus, in addition to being the kind of

unadorned allegations that fail the *Twombly* and *Iqbal* standard, these allegations fail to satisfy

the causation and redressability elements of Article III standing.

A.     **Plaintiff Alleges Too Little to Infer More than the Mere Possibility of Misconduct.**

First, nowhere in the petition does Plaintiff claim that anyone has tried or succeeded in

stealing his identity.  Taking his allegations as true, he simply noticed two inquiries on his credit

report that he did not recognize.  (Pet. ¶ 5.)  That is insufficient to state a claim, because Rule 8

"asks for more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft*, 556

U.S. at 678.  Credit inquiries can be made by various parties for various reasons, including when

businesses check a consumer's credit to make promotional offers, or when businesses check the

credit of a consumer with whom they already have a lending relationship.  (*See* Fair Isaac

Corporation, *Credit Report Q&A: What are inquiries and how do they affect my FICO score?*,

http://www.myfico.com/crediteducation/questions/inquiry-credit-score.aspx.)  That Plaintiff did

not recognize two credit inquiries says little, if anything, about whether Advance did anything

wrong, and where a plaintiff's allegations "do not permit the court t infer more than the mere

possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader

is entitled to relief.'"  *Ashcroft*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).  Without

alleging more, Plaintiff has not nudged his claims across the line from conceivable to plausible.

*Twombly*, 550 U.S. at 570; *cf. Green*, 2015 WL 2066531, at *4 ("Plaintiff makes this conclusory

statement without any allegations of actual incidents of identity theft . . . .  Plaintiff does not

allege that any of the information accessed was actually misused or that there has even been an

attempt to use it.").

**B.**   **Plaintiff Fails to Allege that Any Attempted Identity Theft Is Fairly Traceable to Advance.**

Second—even assuming that a passing reference to "unidentified inquiries" on Plaintiff's credit report is enough to show that his identity has been stolen—nothing in the petition ties the actions of the unidentified third parties who made those credit inquiries to Advance. Thus, to the extent Plaintiff's allegations hint at an actual injury in fact, that injury is not "fairly traceable" to Advance, and Plaintiff still lacks standing. *See Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149–50 (2010).

This was the result in *Peters*, 74 F. Supp. 3d 847. There, plaintiff's personal information was compromised in a data breach of defendant's computer network. *Id.* at 849. Plaintiff claimed that, after the breach, someone attempted to use her credit card for an unauthorized retail purchase. *Id.* Plaintiff also alleged that someone hacked her email and attempted to access her Amazon.com account using information disclosed in the data breach, and that she began receiving telephone and mail solicitations for services based on private information disclosed in the breach. *Id.* Notwithstanding plaintiff's plausible allegations of attempted identity theft, the court dismissed for lack of Article III standing, concluding that, while plaintiff had alleged that defendant proximately caused the attempted identity thefts, those "injuries" were "'the result of the independent action of a third party' and therefore not cognizable under Article III." *Id.* (quoting *S. Christian Leadership Conference v. Supreme Court of State of La.*, 252 F.3d 781, 788 (5th Cir. 2001)).

The same is true here. Even if the unidentified credit inquiries on Plaintiff's credit report were a plausible injury—which, as explained above, they are not—nothing in the Petition overcomes the causal break between Advance's data breach and the acts of unidentified third

10

parties.  Nothing in the petition shows that the inquiries are fairly traceable to any act by Advance, and Plaintiff therefore lacks standing.

### C.   Plaintiff Alleges No Injury that Is Redressable by This Court.

Finally, even if Plaintiff's unidentified credit inquiries were injuries in fact that are traceable to Advance, no favorable decision by this Court could redress whatever harm Plaintiff has experienced.  As this Court recognized in *Green v. eBay*, even where a data breach results in, for example, fraudulent credit card charges, "the injury requirement still is not satisfied if the plaintiffs were not held financially responsible for paying such charges."  *Green*, 2015 WL 2066531, at *4.  For example, in *Peters*, the court found no redressability where the plaintiff was never charged for the fraudulent purchases made with her credit card, and where she was able to change her passwords on her email and Amazon.com accounts to prevent further unauthorized access.  *Peters*, 74 F. Supp. 3d at 857.  In short, there was no "quantifiable damage or loss she has suffered as a result of the Data Breach."  *Id.*  The same is true here.  Even if an unknown third party did attempt to steal Plaintiff's identity to secure vehicle financing—and it is important to keep in mind that the Petition does *not* allege this to be the case—Plaintiff has not alleged that anyone tried to get financing in his name, succeeded in obtaining financing in his name, or that he was held financially responsible for any unauthorized charges.  Because the petition does not identify quantifiable damages or loss that this Court could redress, Plaintiff lacks standing.


### III.   PLAINTIFF FAILS TO STATE CLAIMS FOR NEGLIGENCE, GROSS NEGLIGENCE, BREACH OF FIDUCIARY DUTY, AND INVASION OF PRIVACY.

#### A.   All Causes of Action Should Be Dismissed for Failure to Sufficiently Allege Damages.

Plaintiff's failure to allege sufficient harm also means that Plaintiff fails to properly state claims for negligence, gross negligence, breach of fiduciary duty, and invasion of privacy.  Both

ny-1234648

negligence and gross-negligence claims are analyzed under a duty–risk analysis, requiring a plaintiff to plead that (1) defendant owes plaintiff a duty, (2) defendant breached the duty, (3) defendant's breach injured plaintiff, (4) that defendant's breach was a legal cause of plaintiff's injuries, and (5) actual damages. *Rathey v. Priority EMS, Inc.*, 2004-0199 (La. App. 4 Cir. 1/12/05); 894 So. 2d 438, 459. Similarly, to properly state a claim for breach of fiduciary duty, a plaintiff must plead (1) the existence of a fiduciary duty, (2) an action taken in violation of that duty, and (3) the proximate cause of damages. *See Jobe v. ATR Mktg., Inc.*, No. Civ.A. 96–3396, 1998 WL 799236, at *6 (E.D. La. Nov. 13, 1998). Finally, "in an invasion of privacy suit plaintiff must show actual damages." *Young v. St. Landry Par. Sch. Bd.*, 95-1480 (La. App. 3 Cir. 5/1/96); 673 So. 2d 1272, 1276.

As outlined in Section I above, Plaintiff fails to allege any injury in fact or certainly impending harm. Absent something more than the speculative injuries Plaintiff claims he might suffer, not only does Plaintiff lack standing, but he also fails to state claims on which relief can be granted. *See Pinero v. Jackson Hewitt Tax Serv. Inc.*, 594 F. Supp. 2d 710, 713–16 (E.D. La. 2009) (dismissing negligence claim arising from alleged improper disposal of plaintiff's private information, because plaintiff did not allege that anyone "used any of her information in an unauthorized manner" and did not show any actual damage resulting from the unauthorized disclosure); *Ponder v. Pfizer, Inc.*, 522 F. Supp. 2d 793, 798 (M.D. La. 2007) (dismissing breach-of-fiduciary-duty claim, concluding that plaintiffs' "current burden of monitoring their credit, scrutinizing account statements, and closing and opening accounts" did not constitute actual damages, since plaintiffs did not allege "that someone actually used the disclosed information to his detriment"); *Melacon v. La. Office of Student Fin. Assistance*, 567 F. Supp. 2d 873, 877 (E.D. La. 2008) ("[T]he mere possibility that personal information may be at increased

risk does not constitute actual injury sufficient to maintain a claim for negligence under the current state of Louisiana law."); *Young*, 673 So. 2d at 1276 (affirming dismissal of invasion of privacy claim for failure to show actual damages).

     **B.**    **The Third Cause of Action Should Be Dismissed for Failure to Sufficiently Allege Any Fiduciary Duty.**

Plaintiff's fiduciary-duty claim also should be dismissed for failure to plead the existence of a fiduciary relationship.  The key element of a fiduciary-duty claim is the existence of a fiduciary duty owed by Advance to Plaintiff.  *See Jobe*, 1998 WL 799236, at *6.  But Plaintiff fails to allege facts sufficient to establish that Advance owed him any duty.  His sole allegation regarding this element is that "Advance owed Plaintiff and the Class the highest fiduciary duty of good faith, fair dealing, loyalty and care with respect to the maintenance of the pertinent and confidential personal information Advance required of its employees."  (Pet. ¶ 33.)  That allegation, however, in addition to being conclusory, is insufficient, because the mere sharing of confidential information combined with a promise to protect that information is insufficient to establish a fiduciary duty. *See Jobe*, 1998 WL 799236, at *7 (the "obligation not to disclose confidential information to a third party, which arises from a single agreement or promise," does not constitute a "*relationship* of trust and confidence giving rise to fiduciary duty upon which a cause of action may be made") (emphasis in original); *see also Omnitech Int'l, Inc. v. Clorox Co.*, 11 F.3d 1316, 1330–31 (5th Cir. 1994) (defendant owed plaintiff no fiduciary duty despite plaintiff's disclosure of confidential information to defendant where the parties had an "arms-length business relationship").  Accordingly, Plaintiff's breach-of-fiduciary-duty claim should be dismissed for failure to state a claim.

13

### C.   The Fourth Cause of Action Should Be Dismissed for Failure to Allege Intentional Invasion of Privacy.

Finally, Plaintiff's attempt to plead invasion of privacy fails for reasons other than his failure to plead actual damages, as well.  First, invasion of privacy is an intentional tort and Plaintiff has not alleged that Advance intentionally disclosed private facts concerning Plaintiff. *See Leger v. Spurlock*, 589 So. 2d 40, 43 (La. App. 1 Cir. 1991).  Plaintiff instead alleges that an unknown third party, "posing as an employee" of Advance, conned an actual Advance employee into disclosing Plaintiff's W-2.  (Pet. ¶¶ 1–2.)  To amount to an intentional tort, a plaintiff must show that "the defendant either desired to bring about the physical results of his act or believed they were substantially certain to follow from what he did."  *Bazley v. Tortorich*, 397 So. 2d 475, 482 (La. 1981).  Nothing in the Petition indicates that Advance desired to bring about the results Plaintiff alleges, or that it believed the data breach was substantially certain to follow from anything it did.  To the extent the Petition indicates that Advance was conned, it suggests that the alleged disclosure was anything but desired or that Advance, or any of its employees, even believed it was disclosing Plaintiff's personal information.

Second, to the extent Plaintiff bases his claim on alleged public disclosure of private facts (Pet. ¶¶ 38–39), Plaintiff fails to allege disclosure to the general public or a large number of persons, as he must to sustain his claim.  Under Louisiana law, this form of invasion of privacy occurs only when a defendant "giv[es] publicity to a matter concerning the private life of another, when the publicized matter would be highly offensive to a reasonable person and is not of legitimate concern to the public."  *Roshto v. Hebert*, 439 So. 2d 428, 430 (La. 1983) (citing Restatement (Second) of Torts, § 652D (1977)).  Importantly, "publicity" in this context "means that the matter is made public, by communicating it *to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge*."

14

Restatement (Second) of Torts, § 652D, cmt. *a* (1977) (emphasis added). According to Plaintiff, his W-2 was disclosed to just one "outside party posing as an Advance employee," and that this individual *could have* sold Plaintiff's information to other third-party data thieves for illicit activities. (Pet. ¶¶ 1, 4.) Disclosure to one individual, or even a few, is not an actionable public disclosure "to the public at large," nor is it a disclosure to "so many people" that it is "substantially certain" to become a matter of public knowledge. Plaintiff therefore fails to state an invasion-of-privacy claim.

## CONCLUSION

For the foregoing reasons, the Petition should be dismissed in its entirety for lack of standing and for failure to state a claim.

Dated: June 7, 2016                          Respectfully submitted,

                                             */s/ Tyler J. Rench*
                                             R. PATRICK VANCE, T.A. (La. # 13008)
                                             TYLER J. RENCH (La. # 34049)
                                             Jones Walker LLP
                                             201 St. Charles Ave., Suite 5100
                                             New Orleans, Louisiana 70170
                                             Telephone: (504) 582-8336
                                             Facsimile:  (504) 582-8336
                                             pvance@joneswalker.com
                                             trench@joneswalker.com

                                             *Counsel for Defendant Advance Stores*
                                             *Company, Incorporated*

ny-1234648

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing document was served on

Counsel for Plaintiff, listed below, through the Court's CM/ECF system this 7th day of June

2016.

Marc R. Michaud, 400 Poydras Street, Suite 1680, New Orleans, LA 70130,
mmichaud@patrickmillerlaw.com

*/s/ Tyler J. Rench*

16