UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **WALTER BRADIX, IV, individually and on behalf of all others similarly situated,** | * * * | |
| **Plaintiff,** | * * | Civil action No. 2:16-cv-04902 |
| v. | * * | Judge: Susie Morgan |
| **ADVANCE STORES COMPANY, INC. d/b/a ADVANCE AUTO PARTS,** | * * * | Magistrate: Daniel E. Knowles, III |
| **Defendants.** | * | |

******************************************

## MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

NOW INTO COURT, comes Plaintiff Walter Bradix, IV ("Bradix"), on behalf of himself and all those similarly situated, and opposes Defendant Advance Stores Company, Inc., d/b/a Advance Auto Parts' (hereinafter, "Advance") Motion to Dismiss and accompanying Memorandum in Support of such motion (Record Document No. 8-1, hereinafter, the "Motion"). For reasons stated herein, the Court should deny the Motion.

### I.  Introduction

One definition of a "passing reference" is an adverb or adjective that describes: cursory or casual in action or manner[1]. Yet another provides an alternative word, which means the same thing: allude[2]. And Webster's Dictionary defines allude as follows: " [T]o refer to something

---

[1] *See* http://www.thefreedictionary.com/passing,
[2] *See* http://www.wordhippo.com/what-is/another-word-for/make_a_passing_reference.html.

1

indirectly or by suggestion; to have reference to a subject not specifically and plainly mentioned[3]."

The crux of Advance's Motion is that Bradix fails to allege a specific injury, which would give him standing to bring the instant lawsuit, and that Bradix's explicit allegation of possible identity theft amounts to a mere "passing reference." To be clear, that which Advance describes as a "passing reference" is the following: "<u>Indeed, Plaintiff has noticed two as-yet unidentified inquiries on his consumer credit report, both were attempts to secure vehicle financing</u>[4]." The Court should note that this allegation is found in its own paragraph (5), is not a suggestion and is instead, specifically and plainly mentioned.

Interestingly, Advance makes the identical argument in its Motion to Dismiss the case *Whitehead v. Advance Stores Company, Inc.*[5] Curiously, however, the plaintiff in that case makes no allegation whatsoever regarding any specific actual damage, but instead alludes to things that might, but have not yet happened. In other words, Advance seeks to dismiss the instant case based on allegations from another case. And while Bradix can sympathize with Advance's laudable goal of efficiency in this regard, it is by no means grounds for dismissal of this case. As such, when it considers the facts and allegations actually made in this case, this Court should deny Advance's Motion.

## II.   Facts

This case arises out of Advance's negligent conduct. This plain and simple statement has not, and will not be contested in this case. Whether such conduct amounts to gross negligence, a breach of its fiduciary duties or an invasion of privacy, are questions for another day. But there

---

[3] http://www.webster-dictionary.net/definition/allude.
[4] Petition, ¶5 (emphasis added).
[5] M.D. Fl., No. 5:16-CV-250-RBD-PRL, at p. 8.

is no argument that Advance fell victim to a phishing scheme, and in so doing, voluntarily produced a file that contained Bradix's and the putative Class's private and personal identifying information, including social security numbers, dates of birth, taxable income and state of taxation[6].

This is not a case of a computer hacker breaching corporate security from outside and stealing information and data surreptitiously. Rather, an employee of Advance was asked to provide this pertinent and private information, and did so. This distinguishing factor goes to the heart of Advance's argument in favor of dismissal, which may be summarized as follows: yes, we acted stupidly, but because our stupidity has yet to cause you actual harm (other than the obvious distress at having one's personal and private information out in the ethos), you have no standing to sue us. By Advance's logic, a pickpocket may steal someone's wallet, but until the thief actually spends the money in the wallet, the thief has no liability to the victim. As for the wallet itself…

This flawed logic may or may not be holding sway in cases involving no actual allegations of harm, but in situations such as Bradix's, it is wholly without moment. Bradix did not limit his allegations to things that might/will certainly happen, but have not yet, rather, he explicitly alleged actual harm already befallen him. And while Bradix may not yet be able to prove the connection between his specific allegations of unknown individual(s) attempting to procure auto financing in his name to Advance's admitted negligence, this connection will be the focus of discovery in the form of subpoenas, depositions, etc. But as Advance pointed out, this Court is required to analyze this Motion as though such a connection has already been

---

[6] In its Motion, Advance adheres to the Federal Rule of Civil Procedure 12 in that it accepts Bradix's well-pled allegations as true. But there is no argument whatsoever that these events did not actually happen.

demonstrated. In short, there is simply no way that dismissal of this case is appropriate, even if some other case may indeed be ripe for dismissal based on a different fact pattern.

### III. Law and Argument

A motion for summary judgment, let alone a motion to dismiss, cannot be granted when a question of fact exists as to a crucial aspect of a plaintiff's case. Here, whether Bradix's allegation that unidentified attempts to procure auto financing in Bradix's name, which occurred almost immediately after Advance negligently produced his personal and private information, is sufficient to obtain Article III standing is the only question at issue in this Motion. The Court will eventually decide whether the event constitutes an injury in fact as a matter of law, and then the trier of fact must decide whether this event actually happened. Either way, these are not questions that this Court can answer at this stage of the litigation. Focusing on the matter at hand, however, Bradix clearly and explicitly alleged actual damage, and in no way "alluded to," "referenced," or "suggested" in passing to some vague conduct. Accordingly, this Court must deny Advance's Motion.

A. Dismissal Standard.

Federal Rule of Civil Procedure 12(b)(1) allows dismissal of complaints where the court lacks subject matter jurisdiction, while Rule 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." When considering a motion to dismiss under Rule 12, the court must accept as true all factual allegations in the complaint and must draw inferences in a light most favorable to the plaintiff[7]. "'[T]he central issue is whether,

---

[7] *See Scheur v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 1081 (2007); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

in the light most favorable to the plaintiff, the complaint states a valid claim for relief.[8]" "To avoid dismissal, a plaintiff must plead sufficient facts to 'state a claim to relief that is plausible on its face.[9]" "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.[10]" "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.[11]"

    B. <u>Bradix Suffered An Injury.</u>

Bradix has alleged that an unknown individual has sought auto financing in his name and believes this is the direct result of Advance's negligence. But Advance posits that this does not amount to an injury in fact in order to confer Article III standing. In support of this contention, Advance largely avoids Bradix's actual allegations, choosing instead to focus on the allegations made in a case in Florida. Indeed, Advance focuses on statements of fact that are common sense obvious even to the layman: that the primary purpose of a phishing scheme is to procure private and personal information to be used for the thief's benefit. But this obvious statement of fact is beside the point.

It is undisputed that in some instances, credit inquiries can reduce a consumer's credit score[12]. And at least one court ruled that depleted credit scores constitute an injury in fact

---

[8] *Id.* at 544 (quoting *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir.2008) (internal quotations omitted)).
[9] *Id.* (quoting *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007))).
[10] *Id.* (quoting *Iqbal*, 129 S.Ct. At 1949).
[11] Cuvillier v. Taylor, 503 F.3d 397, 401 (5th Cir.2007) (quoting Twombly, 550 U.S. at 555).
[12] *See e.g. Santangelo v. Comcast Corp.*, 2016 WL 464223, *1 (W.L. Ill. 2016). *See also* http://www.myfico.com/CreditEducation/CreditChecks/Inquiries.aspx ("FICO's research shows that opening several

sufficient for standing purposes: "In short, the Court agrees with [plaintiff] that a depleted credit score is sufficient to constitute an injury-in-fact for the purposes of establishing Article III standing. Credit scores are of great importance in our economy, and a depleted credit score could affect a consumer in numerous ways, inflicting harm that often may be difficult to prove or quantify[13]."

But even if this Court ignores Bradix's allegation of unauthorized credit inquiries, as Advance hopes it does, the fact remains that the phishing scheme in this case is typical and common. After all, why would a thief procure W-2 information in the first place?! One commenter shows that "W2 information is highly prized by fraudsters involved in tax refund fraud, a multi-billion dollar problem in which thieves claim a large refund in the victim's name, and ask for the funds to be electronically deposited into an account the crooks control[14]." In fact, this same thing happened to Moneytree, Inc., as well as Seagate Technology, PLC[15].

Advance seeks to have this case, and any others dismissed before the fraudsters' illicit conduct can be traced back to Advance's negligence. Because Advance's negligence occurred in March of 2016, it is likely that any tax refund fraud scheme directly resulting from Advance's conduct would not be discovered until after next year's tax filing deadline. In other words, Bradix, or any other similarly situated individual could file his or her tax returns next April only to have his or her refund denied due to the thief's earlier conduct. And in that scenario, under Louisiana law, any actions for negligence would be prescribed, as the conduct giving rise to the cause of action would have occurred more than one-year prior thereto. In short, Advance seeks

---

credit accounts in a short period of time represents greater credit risk. When the information on your credit report indicates that you have been applying for multiple new credit lines in a short period of time . . . your FICO Scores can be lower as a result.").

[13] *See Santangelo*, 2016 WL 464223 at *4.
[14] http://krebsonsecurity.com/2016/03/thieves-phish-moneytree-employee-tax-data/
[15] *See id.*

to hide the ball long enough to run out the clock. This Court should see through this cynical ploy.

### C. Article III Law Is In Flux.

Article III standing "in no way depends on the merits of the plaintiff's contention that particular conduct is illegal[16]." On motions to dismiss, courts "presume that general allegations embrace those specific facts that are necessary to support the claim[17]." To establish Article III standing, a party must "demonstrate that it has suffered a concrete and particularized injury that is either actual or imminent, that the injury is fairly traceable to the defendant, and that it is likely that a favorable decision will redress that injury[18]." "Injury in fact" reflects that requirement that a person be "adversely affected" or "aggrieved," and serves to distinguish a person with a direct stake in the outcome of a litigation – even if small – from a person with a mere interest in the problem[19]. For purposes of Article III standing, "[t]he injury may be minimal[20]."

In this case, Advance takes great pains to demonstrate that in several district courts around the country, in cases of data breach such as the instant matter, unless a plaintiff alleges actual harm, the cases will be dismissed for lack of Article III standing[21]. Bradix has alleged actual injury-in-fact, so the following is superfluous, but nevertheless, should the Court consider the question, Bradix posits that he and the proposed Class have standing to pursue their claims regardless. To wit, while the Fifth Circuit has yet to speak on the issue, the Seventh and the

---

[16] *Warth v. Seldin*, 422 U.S. 490, 500 (1975); *see also Scheur v. Rhodes*, 416 U.S. 232, 236 (1974); *Holistic Candlers & Consumers Ass'n v. Food & Drug Admin.*, 664 F.3d 940, 943 (D.C. Cir. 2012).
[17] *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)(quotations omitted).
[18] *Massachusetts v. E.P.A.*, 549 U.S. 497, 517 (2007)(citing *Lujan*, 504 U.S. at 560-61); *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009).
[19] *See United States v. Students Challenging Reg. Agency Procedures (SCRAP)*, 412 U.S. 669, 690 n.14 (1973).
[20] *Preminger v. Peake*, 552 F.3d 757, 763 (9th Cir. 2008).
[21] *See e.g.*, Motion at p.4.

Ninth Circuits are reaching the opposite conclusion that Advance presents as the state of the law[22].

In Adobe, the Court concluded that in a case of intentional data theft, the alleged harm done was sufficiently concrete and imminent to confer Article III standing[23]. In particular, the Court stated:

> [T]he risk that Plaintiffs' personal data will be misused by the hackers who breached Adobe's network is immediate and very real. Plaintiffs allege that the hackers deliberately targeted Adobe's servers and spent several weeks collecting names, usernames, passwords, email addresses, phone numbers, mailing addresses, and credit card numbers and expiration dates. [] Plaintiffs' personal information was among the information taken during the breach.
>
> Given this, the danger that Plaintiffs' stolen data will be subject to misuse can plausibly be described as "certainly impending." Indeed, the threatened injury here could be more imminent only if Plaintiffs could allege that their stolen personal information had already been misused. However, to require Plaintiffs to wait until they actually suffer identity theft or credit card fraud in order to have standing would run counter to the well-established principle that harm need not have already occurred or be "literally certain" in order to constitute injury-in-fact[24].

Here, Bradix has alleged the stolen information may have already been misused. But that notwithstanding, this theft is worse because the phishers acquired Bradix's and the proposed Class's social security numbers, dates of birth and state of taxation. Indeed, the phishers here acquired the not-so-secret recipe for identity theft. As such, this case is much more similar factually to the *Moyer v. Michaels Stores, Inc*[25]. than the *Clapper v. Amnesty International USA*[26] case heavily relied upon by Advance. Specifically, the *Moyers* Court ruled:

---

[22] *See e.g. In Re Adobe Systems, Inc. Privacy Litigation*, 66 F.Supp 3d 1197 (N.D. Cal. 9/4/14); *Pisciotta v. Old National Bancorp.*, 499 F.3d 629, 634 (7th Cir. 2007)("the injury-in-fact requirement can be satisfied by a threat of future harm or by an act which harms the plaintiff only by increasing the risk of future harm that the plaintiff would have otherwise faced, absent the defendant's actions.").
[23] *Id.* at 1214-15.
[24] *Id.*
[25] 2014 WL 3511500 (N.D. Ill. 7/14/2014).
[26] 133 S.Ct. 1138 (2013).

I conclude that the elevated risk of identity theft stemming from the data breach at Michaels is sufficiently imminent to give Plaintiffs standing. This conclusion follows from *Pisciotta* and is consistent with a host of Supreme Court decisions finding standing based on an imminent risk of future injury. *Clapper* is distinguishable based on its admittedly rigorous application of the "certainly impending" standard in a case that involved (1) national security and constitutional issues and (2) no evidence that the relevant risk of harm ever had materialized in similar circumstances[27].

In sum, not only has Bradix actually alleged actual harm in the form of decreased credit scores resulting from the unauthorized inquiries into his credit history, but even if he hadn't, the entire point of a phishing scheme is to acquire personal information to be used in identity theft schemes, such as the fraudulent filing of tax returns.

In Advance's view, Bradix and the Class lack standing to pursue their claims because they have not alleged that the thieves have yet to file fraudulent tax returns. But given that the theft occurred in March, it is entirely likely that the fraudulent tax filings would not, as they could not occur until the following year's tax filing (i.e. April 15, 2017). By then, however, many of the causes of action that the victims might have as recourse would prescribe, as the conduct would have occurred more than one year prior to the resulting damage. This is entirely Advance's point: stall, extend and pretend until the most significant liability associated with their admitted negligence prescribes.

### D. Bradix States Claims For Negligence, Gross Negligence, Breach of Fiduciary Duty and Invasion of Privacy.

In its Motion, Advance argues that Bradix fails to state causes of action for all four of the claims he makes on behalf of the Class. In each of these arguments, Advance's logic depends wholly on the premise that Bradix fails to point to any actual harm done; in effect, Advance makes the Article III standing argument in other forms. The fact that Bradix has in fact alleged

---

[27] *Moyers*, 2014 WL 3511500 at *6.

actual injury-in-fact notwithstanding, Bradix nonetheless states causes of action under Louisiana law.

The standard duty-risk analysis of a negligence action involves four questions:

I. Was the conduct in question a substantial factor in bringing about the harm to the plaintiff, i.e., was it a cause-in-fact of the harm which occurred?

II. Did the defendant owe a duty to the plaintiff?

III. Was the duty breached?

IV. Was the risk, and harm caused, within the scope of protection afforded by the duty breached?[28]

In this case, the conduct in question was the delivery of Bradix's and the Class' personal and private information into the hands of a phishing thief. And Advance owed a duty to Bradix and the Class to keep that private and confidential information private and confidential, a duty which Advance obviously and admittedly breached. And as the *Moyers* Court above succinctly showed, the harm caused by such a breach speaks for itself. Accordingly, Bradix states a cause of action for negligence.

Gross negligence is akin to ordinary negligence and differs only in the matter of degree; gross negligence is equivalent to recklessness[29]. Ordinary negligence, for example, might be shown by someone leaving their laptop computer on the streetcar, which is then discovered by a thief who then uses information contained on the computer to the victim's detriment. Gross negligence would be for the victim to voluntarily give that laptop to the stranger on the streetcar. This is the case here: Advance didn't just have its computer system breached by hackers, rather, one of its employees was duped into voluntarily giving Bradix's and the Class's private and confidential information to the phishing thief. In short, while the Court has discretion in

---

[28] *Roberts v. Benoit*, 605 So.2d 1032, 1041 (9/9/91).
[29] *In Re Oil Spill By Oil Rig Deepwater Horizon In Gulf of Mexico on April 20, 2010*, 21 F.Supp. 3d 657, 732-37 (E.D. La. 2013).

determining whether the conduct amounts to gross negligence, there can be no doubt that Bradix and the Class state a claim for the same.

A fiduciary relationship has been described as "one that exists 'when confidence is reposed on one side and there is resulting superiority and influence on the other[30].'" The word "fiduciary," as a noun, means one who holds a thing in trust for another, a trustee; a person holding the character of a trustee, or a character analogous to that of a trustee, with respect to the trust and confidence involved in it and the scrupulous good faith and candor which it requires; a person having the duty, created by his undertaking, to act primarily for another's benefit in matters connected with such undertaking[31]. One is said to act in a fiduciary capacity "when the business which he transacts, or the money or property which he handles, is not his own or for his own benefit, but for the benefit of another person, as to whom he stands in a relation implying and necessitating great confidence and trust on the one part and a high degree of good faith on the other[32]."

Here, Bradix and the Class entrusted Advance with their personal and private information, including their social security numbers, dates of birth, taxable income and state of taxation. They did so because they were required to as a condition of employment; Bradix could not have chosen to withhold his social security number from Advance and retain his employment there. And as a result, Advance acquired fiduciary status as to Bradix and the Class for purposes of maintaining the security of such personal and private information. To be sure, this information can be said to be the property of Bradix and the Class, and it was thus not Advance's property but instead, was held by Advance for the benefit of Bradix and the Class (i.e. for tax

---

[30] *Plaquemines Parish Commission Council v. Delta Development Company, Inc.*, 502 So.2d 1034, 1040 (La.1987), quoting *Toombs v. Daniels*, 361 N.W.2d 801, 809 (Minn.1985).
[31] *State v. Hagerty*, 251 La. 477, 492, 205 So.2d 369, 374 (1967), quoting 36A C.J.S. Fiduciary, p. 381.
[32] *Hagerty*, 251 La. at 493, 205 So.2d at 374-375, quoting BLACK'S LAW DICTIONARY (4th ed.1951).

withholding purposes). There can be no doubt that not only did Advance have a fiduciary duty to Bradix and its Class of employees, but Advance admitted to breaching such duty.

Finally, an actionable invasion of privacy occurs only when the defendant's conduct is unreasonable and seriously interferes with the plaintiff's privacy interest[33]. For an invasion to be actionable, it is not necessary that there be malicious intent on the part of the defendant[34]. The reasonableness of the defendant's conduct is determined by balancing the conflicting interests at stake; the plaintiff's interest in protecting his privacy from serious invasions, and the defendant's interest in pursuing his course of conduct[35].

Advance unreasonably disclosed Bradix's and the Class's private information to the public when it fell victim to the phishing scheme at issue herein. This is the very definition of the fourth version of invasion of privacy under Louisiana law[36]. Indeed, Advance does not really argue that this conduct did not occur as alleged in the Petition. Rather, Advance sticks with the same argument as in every other iteration in that Bradix was not really damaged by the disclosure[37]. In short, Bradix and the Class more than satisfy their burden of fact-pleading, but in the event the Court concludes otherwise, Bradix would request an opportunity to amend the Petition to further clarify this point.

## VI. <u>Conclusion</u>

The entire point of the instant exercise is for Advance to circumvent its obligations to Bradix and the Class. Indeed, Advance hopes to stall and obfuscate until such time as the claims Bradix and the Class make in their Petition have prescribed. Otherwise, Advance has admitted

---

[33] *See* Comment, The Right of Privacy in Louisiana, 28 La.L.Rev. 469 (1968).
[34] *See Lucas v. Ludwig*, 313 So.2d 12 (La.App. 4th Cir. 1975), writ denied 1975.
[35] *See Jaubert v. Crowley Post-Signal, Inc.*, 375 So.2d 1386, 1389 (La. 10/8/79).
[36] *Id.* at 1388.
[37] Advance does posit that the disclosure was not public and/or that the disclosure was not intentional, but these are questions of fact not suitable for adjudication at this stage of litigation.

liability and Bradix and the Class have been damaged thereby. First, as Bradix highlights in paragraph 5 of the Petition, as evidenced by the unauthorized inquiries into his credit report thereby reducing his credit score. And second and perhaps more ominously, by the certainly impending identity theft and tax return fraud that is all but inevitable for some or all Class members. In fact, Advance's Motion in this regard is merely a cut-and-paste from its nearly identical motion now pending in the Middle District of Florida. The difference between that case and the instant matter is, once again, Bradix's allegation of unauthorized credit inquiries. But regardless of that case's outcome, Bradix and the Class have more than satisfied their burden in this case. Accordingly, this Court should deny Advance's Motion to Dismiss.

DATED this 21st day of June, 2016.                    PATRICK MILLER LLC

/s/ *Marc R. Michaud*
Marc R. Michaud, La. Bar No. 28962
400 Poydras Street, Ste. 1680
New Orleans, LA 70130
(504) 680-4318 (Telephone)
(504) 527-5456 (Facsimile)
mmichaud@patrickmillerlaw.com (Email)

## CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of June, 2016, I served a copy of the foregoing on all parties of record via electronic service through the Electronic Service Filing system and/or by U.S. Mail, facsimile, or overnight mail.

Executed this 21st day of June, 2016.

s/ *Marc R. Michaud*
Marc R. Michaud